UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS
EAST ST. LOUIS DIVISION

| | |
|---|---|
| PHILLIP E. LaPOINTE, #A-83069,     ) | |
|     Plaintiff,     ) | |
|   )  | |
| vs.     ) | Case No. 06-952-DGW |
|   ) | |
| ROGER WALKER, JR., Director, LEE     ) | |
| RYKER, Warden, TIMOTHY LOVE,     ) | |
| Chaplain, REBECCA WHITE, Personal     ) | |
| Property,     ) | |
|   ) | |
|     Defendants.     ) | |

**MEMORANDUM AND ORDER**

Plaintiff Philip E. LaPointe, currently an inmate in the Dixon Correctional Center, brings this action pursuant to 42 U.S.C. § 1983 against Lawrence Correctional Center officials Roger E. Walker, Jr., Lee Ryker, Timothy Love, and Rebecca White (collectively "Defendants") for violations of the First Amendment, Fourteenth Amendment and Religious Land Use and Institutionalized Persons Act ("RLUIPA").  Plaintiff seeks damages and injunctive relief because Defendants allegedly confiscated and refused to return his prayer rug while he was an inmate at the Lawrence Correctional Center.  Now before the Court is Defendants' Motion for Summary Judgment (Doc. 48).  For the reasons set forth below, Defendants' Motion for Summary Judgment (Doc. 48) is **GRANTED**.

**BACKGROUND**

Plaintiff Phillip E. LaPointe ("LaPointe") is a Christian who has been incarcerated within the Illinois Department of Corrections ("IDOC") since 1978 (Doc. 50).  From March 2005 to May 2007, LaPointe was incarcerated at the Lawrence Correctional Center ("LCC") (Docs. 1, 5). At all relevant times, Defendant Roger Walker ("Walker") was the Director of the Illinois

Department of Corrections, Defendant Lee Ryker ("Ryker") was the warden of LCC, Defendant Timothy Love ("Love") was the chaplain at LCC, and Defendant Rebecca White ("White") was the LCC officer in charge of personal property (Doc. 1).

LaPointe practices his faith by kneeling and praying once a day. Several years ago, however, it became difficult for LaPointe to kneel and pray on the prison floor because his arthritis and scoliosis caused his knees and back to bother him (Doc. 1). In approximately 1991, LaPointe's then-chaplain suggested that he use a rug to kneel on while he prayed. *Id*. LaPointe purchased a rug to use as an alternative to kneeling on the prison's floor so that he is comfortable when he prays. *Id*.

Throughout the years, Illinois Department of Corrections officials allowed LaPointe to use his prayer rug when he kneeled and prayed. This changed when LaPointe was transferred to LCC (Doc. 1). On February 27, 2006, LCC Officer White confiscated LaPointe's rug during a prison compliance check, purportedly because he was not a Muslim and because a prayer rug was not deemed a component of LaPointe's Christian faith (Doc. 48). Moreover, at the *Pavey* hearing on December 10, 2009, counsel for Defendants stated that prayer rugs raise security concerns because prisoners can use them to conceal contraband (Doc. 77).

LaPointe opposed White's decision and tried to resolve his complaint with IDOC before filing this lawsuit. LaPointe alleges that he first told his counselor that he needed the rug for "medical reasons" (Doc. 48-1). The counselor then contacted Defendant Love, who informed LaPointe's counselor that LaPointe was not required to have a prayer rug because it was not a part of the Christian faith (Doc. 1). Upon learning that Love had approved of White's decision to retain the rug, LaPointe claims that he spoke to Love personally and asked that his rug be returned. *Id*. During this conversation, LaPointe claims that Love called someone who told him

that all rugs were being taken from Christians, but states he does not know to whom Love was speaking. *Id*.

LaPointe also tried to get his prayer rug back by speaking to Defendant Ryker (Doc. 48-1). Ryker, however, did not engage in any decision-making with respect to the enforcement of religious policies of the prison and delegated the interpretation of those policies to the LCC Chaplain, Defendant Love (Doc. 48-1). Thus, LaPointe's attempt to recover his rug by speaking directly with Defendant Ryker proved unsuccessful because Ryker, while sympathetic, deferred to Defendant Love's decision to not return LaPointe's rug (Doc. 48-1).

Finally, LaPointe filed a formal grievance pursuant to IDOC regulations (Doc. 1). The grievance officer recommended that LaPointe's complaint regarding the confiscation of the prayer rug be denied because "[i]t had not been established that a prayer rug is required as part of the Christian faith." *Id*. Based upon this recommendation, Defendant Ryker concurred in the denial of LaPointe's grievance. *Id*. LaPointe then filed an Appeal to the Director. *Id*. Although LaPointe alleges that Defendant Walker, on appeal, concurred in these findings, Terry Anderson, Manager of the Office of Inmate Issues, has testified by affidavit that Defendant Walker did not personally review LaPointe's grievance (Doc 48-1). Moreover, it is evident that Defendant Walker's June 5, 2006 letter in response to LaPointe's appeal was signed by Anderson on behalf of Defendant Walker (Doc. 1). On September 7, 2006, after LaPointe was transferred from LCC to the Dixon Correctional Center, his prayer rug was returned (Doc. 17).

On November 17, 2006, LaPointe filed a civil rights complaint pursuant to 42 U.S.C. § 1983 against Defendants for violations of RLUIPA and the First and Fourteenth Amendments (Doc. 1). He seeks damages and injunctive relief because Defendants confiscated and refused to return his prayer rug while he was an inmate at LCC. *Id*. On December 17, 2008, Defendants filed a Motion for Summary Judgment (Doc. 48). In their Motion, Defendants claim that they

3

are entitled to summary judgment because (1) LaPointe cannot show that Defendants violated RLUIPA or the First Amendment by taking away his prayer rug because LaPointe was still able to pray; (2) Defendants are entitled to qualified immunity; (3) LaPointe is not entitled to injunctive relief because there is no ongoing violation of federal law; and (4) Defendants Walker and White are not liable under 42 U.S.C. § 1983 because they were not personally involved in violating LaPointe's constitutional rights.[1]  While Defendants did not discuss Plaintiff's Fourteenth Amendment claim in its Motion for Summary Judgment, the Court will address

## DISCUSSION

### *Summary Judgment Standard*

Summary judgment is proper when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) ("[T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."). A fact is material if it is outcome determinative under the governing law. *Estate of Stevens v. City of Green Bay*, 105 F.3d 1169, 1173 (7th Cir. 1997).

Under the summary judgment standard, "[t]he inquiry performed is . . . whether . . . there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson v. Liberty Lobby, Inc*. 477 U.S. 242, 250 (1986). The burden is on the moving party to establish that no material facts are in

---

[1] Although Defendants did not address LaPointe's Fourteenth Amendment Equal Protection claim in its Motion for Summary Judgment, the Court will address it.

4

genuine dispute. *Grun v. Pneumo Abex Corp.*, 163 F.3d 411, 419 (7th Cir. 1998). If the moving party meets this burden, "the nonmovant must set forth specific facts showing a genuine issue for trial, and may not rely upon mere allegations or denials of the pleadings." *Id.* In determining whether there are genuine issues for trial, the court will draw all inferences in a light most favorable to the non-moving party. *Smith on Behalf of Smith v. Severn*, 129 F.3d 419, 426 (7th Cir. 1997).

A.  **First Amendment Claim**

LaPointe claims that he was denied the right to the free exercise of religion when Defendants confiscated and retained his prayer rug because his religion requires that he kneel during prayer. Defendants claim that they confiscated LaPointe's prayer rug based on IDOC regulations and the fact that LaPointe is a Christian. The relevant regulation provides that "[p]rayer rugs may be permitted if utilized as a component of the committed person's faith, but will be limited to the immediate living area during prayer or the area of religious service." Ill. Admin. Code tit. 20 § 425.90(c)(8)(2010). However, "[r]eligious items may be limited, restricted, or denied by the Chief Administrative Officer based upon concerns such as safety, security, rehabilitation, institutional order, space, resources, or facilitation of gang identification, recruitment, or activity." Ill. Admin. Code tit. 20 § 425.90(c)(2010).

Defendants maintain that a prayer rug is a component of the Islamic faith because of the Islamic requirement of a clean place to pray. Accordingly, Defendants provide prayer rugs to Muslim inmates. However, Defendants maintain, and LaPointe does not dispute, that prayer rugs are not necessary to the Christian faith. Thus, Defendants claim that they are entitled to summary judgment on LaPointe's First Amendment claim because the lack of access to a prayer rug did not deny his right to the free exercise of religion.

Incarceration and the requirements of the penal institution limit the constitutional rights of the prisoner. *Jones v. North Carolina Prisoners' Labor Union, Inc*. 433 U.S. 119, 125 (1977). This retraction of constitutional rights "is justified by the considerations underlying our penal system." *Id.* Thus, "when a prison regulation impinges on inmates' constitutional rights, the regulation is valid if it is reasonably related to legitimate penological interests." *Turner v. Safley*, 482 U.S. 78, 89 (1987). The Court will accord substantial deference to the judgment of prison administrators and will place the burden on the prisoner to disprove the validity of the prison regulations. *Overton v. Bazzetta*, 539 U.S. 126, 132 (2003).

Among the constitutional rights limited by the fact of incarceration and needs of the penal institution is the First Amendment right to the free exercise of religion. Any allegation that prison restrictions inhibit First Amendment interests "must be analyzed in terms of the legitimate policies and goals of the corrections system, to whose custody and care the prisoner has been committed in accordance with due process of law." *Jones,* 433 U.S. at 125. Thus, "[t]he two competing interests—the state's interest in the proper administration of the penal system and the prisoner's interest in his First Amendment right to adhere to the tenets of his faith—must be mutually accommodated." *Childs v. Duckworth*, 705 F.2d 915, 920-21 (7th Cir. 1983); *see Richards v. White*, 957 F.2d 471, 474 (7th Cir. 1992) ("A prisoner is entitled to practice his religion as long as doing so does not unduly burden the institution."). The fact that a regulation has a rational connection to a legitimate governmental interest and that there exists alternative means to exercise the asserted right counsels in favor of finding that the regulation does not substantially burden the inmate's religious conduct or expression. *Young v. Lane*, 922 F.2d 370 (7th Cir. 1991).

Here, the lack of access to a prayer rug did not substantially burden LaPointe's right to the free exercise of religion. First, LaPointe was free to practice his religion by alternative

6

means; he admits that he needed the prayer rug only for medical reasons, not because it was a necessary component of his Christian faith. LaPointe also admits that he could have knelt and prayed on items other than his rug without violating his religious beliefs. Second, confiscation of the prayer rug was legitimately related to security concerns at LLC; Defendants maintain that prayer rugs can be used to hide contraband, and we will defer to Defendants' experience and expertise with respect to these concerns with internal security at LCC. Accordingly, summary judgment is entered in favor of Defendants on Plaintiff's Equal Protection claim.

B.   **Fourteenth Amendment Equal Protection Claim**

LaPointe additionally claims that Defendants discriminated against him in violation of the Equal Protection Clause of the Fourteenth Amendment. He alleges that Muslim inmates are treated more favorably than Christian inmates because Muslims, unlike Christians, are permitted to use a prayer rug. Defendants contend that LaPointe cannot establish a violation of the Equal Protection Clause of the Fourteenth Amendment because he is not similarly situated to Muslim inmates.

The Seventh Circuit has held that prison inmates do not give up their equal protection rights as a result of their confinement, although "[u]nequal treatment among inmates [] is justified if it bears a rational relation to legitimate penal interest." *Williams v. Lane*, 851 F.2d 867, 881 (7th Cir. 1988). With respect to religious exercise, prison officials must provide inmates with a "reasonable opportunity" to exercise their faith that is "comparable to the opportunity afforded fellow prisoners who adhere to conventional religious precepts." *Cruz v. Beto*, 405 U.S. 319, 322 (1972). Prison officials, however, are not required to provide "equal apportionment, or identical opportunities." *Ra Chaka v. Franzen*, 727 F. Supp. 454, 460 (N.D. Ill. 1989); *see Cruz*, 405 U.S. at 322 n.2 ("We do not suggest, of course, that every religious sect or group within a prison-however few in number-must have identical facilities or personnel.").

Moreover, there is no requirement that courts "adopt a numerical standard in analyzing prisoner religious equal protection claims." *Ra Chaka*, 727 F. Supp. at 460 (citing *Butler-Bey v. Frey*, 811 F.2d 449, 453-54 (8th Cir. 1987). Rather, prison officials are permitted to discriminate against a faith "to the extent required by the exigencies of prison administration." *Id.* (citing *Johnson-Bey v. Lane*, 863 F.2d 1308, 1312 (7th Cir. 1988)). Thus, whether a "reasonable opportunity" has been provided must be evaluated in light of the prison officials' security and safety concerns. *Id.*

In addition, a prisoner's equal protection claim must fail where (1) the limitation on his or her religious exercise is legitimately related to the prison's interest in security, and (2) any exception for other inmates to the enforcement of the limitation is non-arbitrary. *Reed v. Faulkner*, 842 F.2d 960, 962 (7th Cir. 1988). In *Reed*, a prison inmate who claimed to practice the Rastafarian faith sued prison officials, alleging that they infringed upon his religious liberty by preventing him from growing his hair long. *Id.* at 961. The plaintiff additionally claimed that prison officials denied him equal protection of the law because the regulation prohibiting long hair was not enforced against American Indian inmates. *Id.* The district court entered judgment in favor of defendants, and the plaintiff appealed. On appeal, the Seventh Circuit held that the plaintiff's free-exercise claim must fail if the regulation struck an appropriate balance between religious liberty and the need for safety and security. *Id.* at 962. The Court added that, if the exception for American Indians is not arbitrary, then the free-exercise claim must also fail. *Id.* Ultimately, the Court remanded the case for further consideration, in part, because the defendants had not set forth a non-arbitrary reason for treating American Indians differently than Rastafarians.

In the present case, LaPointe's Equal Protection claim fails. First, Defendants clearly provided LaPointe with a "reasonable opportunity" to exercise his Christian faith because, as

noted above, LaPointe was free to practice his religion by alternative means. *See Cruz*, 405 U.S. at 322. Second, Defendants provided prayer rugs to Muslim inmates in a non-arbitrary manner as the Muslim religion requires that its followers pray on a clean surface, in contrast to LaPointe's assertion that he needs a prayer rug merely for comfort (Doc. 51). *See Reed*, 842 F.2d at 962. Third, any unequal treatment with respect to the use of prayer rugs among Christian and Muslim inmates was justified if it was rationally related to the prison's legitimate interests in safety and security. *See Williams*, 851 F.2d at 881; *Ra Chaka*, 727 F. Supp. at 460. As previously stated, the different treatment accorded LaPointe with respect to the use of prayer rug was legitimately related to safety and security concerns at LLC- inmates have limited the use of prayer rugs because they can be used hide contraband. Accordingly, summary judgment is entered in favor of Defendants on Plaintiff's Equal Protection claim.

C.  **RLUIPA Claim**

LaPointe also alleges violations of RLUIPA. Defendants argue that LaPointe has failed to state a claim under RLUIPA because he has not demonstrated that Defendants placed a "substantial burden" on his right to exercise his Christian faith.

Section 3 of RLUIPA, 42 U.S.C. § 2000cc-1(a)(1)-(2), provides that:

> No government shall impose a substantial burden on the religious exercise of a person residing in or confined to an institution, . . . even if the burden results from a rule of general applicability, unless the government demonstrates that imposition of the burden on that person (1) is in furtherance of a compelling governmental interest; and (2) is the least restrictive means of furthering that compelling governmental interest.

In order to set forth a claim under RLUIPA, the plaintiff must show that (1) he seeks to engage in the exercise of religion, and (2) the challenged practice substantially burdens the exercise of that religion." *Koger v. Bryan,* 523 F.3d 789, 796 (7th Cir. 2008). Thus, the court

must determine (1) whether the burdened activity is a religious exercise, and (2) whether that burden is substantial. *Id.*

To begin with, the term "religious exercise" in RLUIPA has been defined to include "any exercise of religion, whether or not compelled by, or central to, a system of religious belief." 42 U.S.C. § 2000cc-5(7). Thus, RLUIPA is intended to "guarant[ee] [] sincerely held religious beliefs" and "may not be invoked simply to protect any way of life, however virtuous and admirable if it is based on purely secular considerations." *Koger,* 523 F.3d at 797 (citations omitted). While the statute "bars inquiry into whether a particular belief or practice is central to a prisoner's religion" it does permit "inquiry into the sincerity of a prisoner's professed religiosity." *Id.* Importantly, the opinion of clergy as to the requirements of a religion cannot override the prisoner's sincerely held religious beliefs. *Id.* at 800; *see Nelson v. Miller*, 570 F.3d 868, 879 (7th Cir. 2009) (holding that it was the sincerity of the inmate's religious beliefs—not the objective determination of the prison's chaplain—that determined whether the inmate's religion compelled certain dietary restrictions).

In addition, the "exercise of religion often involves not only belief and profession but the performance of . . . physical acts [such as] assembling with others for a worship service . . . ." *Cutter v. Wilkinson,* 544 U.S. 709, 720 (2005) (citations omitted). Consequently, RLUIPA "protects more than the right to practice one's faith; it protects the right to engage in specific, meaningful acts of religious expression in the absence of a compelling reason to limit the expression." *Meyer v. Teslik,* 411 F.Supp.2d 983, 989 (W.D. Wis. 2006). Religious accommodations, however, cannot override an institution's other significant security interests, and the court will defer to the institutional official's experience and expertise in the area of prison security. *Cutter v. Wilkinson*, 544 U.S. 709, 722 (2005).

Furthermore, "[a] substantial burden on religious exercise is one that necessarily bears direct, primary, and fundamental responsibility for rendering religious exercise . . . effectively impracticable."  *Civil Liberties for Urban Believers v. City of Chicago,* 342 F.3d 752, 761 (7th Cir. 2003).  Under the substantial burden test, the Court must determine whether the governmental regulation "puts [a] substantial pressure on an adherent to modify his behavior and violate his beliefs." *Nelson v. Miller,* 570 F.3d 868, 878 (7th Cir. 2009) (internal quotations and citations omitted).  An "outright ban on a particular religious exercise is a substantial burden on [the] religious exercise." *Greeno v. Solano County Jail*, 513 F.3d 982, 988 (9th Cir. 2008).  For example, a prison's decision to deny inmates belonging to a particular faith the opportunity for communal worship substantially burdens religious exercise.  *See, e.g., Murphy v. Missouri Dept. of Corrections,* 372 F.3d 979, 982 (8th Cir. 2004) (holding that the district court improperly held on summary judgment that [the inmate's] religion was not substantially burdened when the prison denied his religious group communal worship); *Meyer v. Teslik,* 411 F. Supp. 2d 983, 989-90 (W.D. Wis. 2006) (holding that the decision by the prison's chaplain to prohibit an inmate from attending religious services was a "substantial burden" within the meaning of RLUIPA).

Here, there is no genuine issue as to whether LaPointe *sincerely believed* that his Christian faith required the use of a prayer rug.  LaPointe has stated that "praying on one's knees is a requirement, but not specifically on a prayer rug" (Doc. 48-2).  Indeed, in his brief LaPointe makes no claim that his religious faith requires a prayer rug, but only claims that his faith "commands and requires that he kneel during prayer" (Doc. 50).  Moreover, LaPointe admitted at his deposition that the purpose of the prayer rug "is more about being comfortable while you pray . . . ." (Doc. 48-1).  Thus, while removal of the prayer rug may have rendered the act of praying uncomfortable or inconvenient, it did not render it "effectively impractical."  *See Civil Liberties for Urban Believers*, 342 F.3d at 761.

11

Moreover, there is no genuine dispute as to any facts that would demonstrate that confiscation of the prayer rug substantially burdened the exercise of LaPointe's Christian faith in violation of RLUIPA. Unlike *Meyer* and *Murphy*, where prison officials denied prisoners the opportunity to engage in communal worship, here the Defendants did not ban outright the opportunity for LaPointe to engage in religious prayer. In fact, LaPointe has admitted that he could have knelt and prayed on items other than his rug without violating his religious beliefs (Doc. 48-2). Given the alternatives available to LaPointe, clearly Defendants did not render the act of prayer "effectively impracticable" or put "substantial pressure" on LaPointe to modify or violate the exercise of his Christian faith.

In further support of his claim, Plaintiff directs the Court to an Eighth Circuit case, *Newingham v. Magness*, 364 Fed. Appx. 298 (8th Cir. 2010). (Doc. 76). In *Newingham*, a former Arkansas Department of Corrections Muslim inmate brought an action against prison officials for violations of RLUIPA after being denied prayer rug. The district court granted summary judgment denying the plaintiff's claim by relying on the prison coordinator's statement that a prayer rug is not a religious requirement but is rather a convenience. *Id.* at 300. On appeal, the Eighth Circuit held that the Coordinator's statement was not a sufficient basis to grant summary judgment because the defendant "assert[ed] that the Qur'an requires the use of a prayer rug to separate the body from the unclean floor." *Id.* Thus, the Court remanded on plaintiff's claim under RLUIPA. Here, LaPointe's assertion that *Newingham* "is on point with the issue currently before the court" is to no avail. The present case is clearly distinguishable from *Newingham*, because here LaPointe does not contend that his Christian faith requires the use of a prayer rug. Accordingly, summary judgment is entered in favor of Defendants on Plaintiff's RLUIPA claim.

## CONCLUSION

Having found no violations of the First Amendment, Fourteenth Amendment and RLUIPA, the Court finds it unnecessary to consider Defendants' remaining arguments with respect to qualified immunity and injunctive relief.  For the reasons set forth above, Defendants' Motion for Summary Judgment (Doc. 48) is **GRANTED**. Because all claims against all Defendants have been decided, the Court **DIRECTS** the Clerk of the Court to close the case and enter judgment in favor of Defendants Roger E. Walker, Jr., Lee Ryker, Timothy Love and Rebecca White and against Plaintiff Phillip LaPointe.

**IT IS SO ORDERED**.

DATED:  September 15, 2010

s/ *Donald G. Wilkerson*
**DONALD G. WILKERSON**
**United States Magistrate Judge**